**United States District Court**
**District of Massachusetts**

_____
                                                )
BEGASHAW AYELE,                                  )
                    Appellant,                   )
                                                 )
          v.                                     )
                                                 )
EDUCATIONAL CREDIT MANAGEMENT                    )
CORP.,                                           )
                    Appellee.                    )
_____ )        Bankruptcy Appeal No.
                                                 12-11005-NMG

**MEMORANDUM & ORDER**

**GORTON, J.**

Begashaw Ayele ("Appellant" or "Ayele") appeals a decision
of the United States Bankruptcy Court for the District of
Massachusetts in which that Court, pursuant to 11 U.S.C.
§ 523(a)(8), declined to discharge his student loan obligations
to Educational Credit Management Corporation ("Appellee" or
"ECMC"), totaling $30,605.83.  Ayele argues that the Bankruptcy
Court erred when it found that repayment of his student loan debt
would not impose an undue hardship upon him.

I.   **Background**

Ayele is a 53-year-old, divorced Ethiopian immigrant who is
now a naturalized U.S. Citizen.  He has earned degrees from
several American universities.  The parties agree that ECMC holds
three student loans incurred by Ayele while he was attending
Southern Connecticut State University:

-1-

1) a student loan that was disbursed on February 19, 1991, under the federal Supplement Loan for Students Program ("SLS") the outstanding balance of which was $12,186.87 as of April 11, 2011;

2) a student loan that was disbursed on December 27, 1991, under the federal Guaranteed Student Loan Program ("GSLP") the outstanding balance of which was $5,277.94 as of April 11, 2011; and

3) a student loan that was disbursed on February 19, 1992 under the federal SLS program the outstanding balance of which was $12,618.94 as of April 11, 2011.

As explained by Ayele, despite receiving associates, bachelors and masters degrees, during the 29 years that he has lived in the United States, he has only held hourly wage positions.  His jobs as a parking lot attendant at Boston University and as a ramp agent at Boston Logan Airport have paid between $9 and $10 an hour.  At the time of trial, Ayele had been unemployed for approximately 9 months and was receiving unemployment benefits.  He was residing in South Boston, Massachusetts in an apartment provided by the Boston Housing Authority.  At trial, Ayele testified that he had sent out hundreds of applications in an attempt to find employment suited to his educational level to no avail.  He also expressed unwillingness to return to employment as a parking lot attendant or to a similar position.

## II. <u>Procedural History</u>

Ayele filed a Chapter 7 Bankruptcy petition and commenced the adversary proceeding on November 9, 2010.  The Bankruptcy

Court conducted a trial on November 2, 2011, at which Ayele was
the only witness.  On February 8, 2012, the Court entered
judgment for ECMC with the proviso that if Ayele informed the
Court within 14 days thereafter that he intended to participate
and comply in good faith in the William D. Ford Direct Loan
Program ("the Ford Program") the Court would enter judgment
discharging any student loans that remained after the conclusion
of the repayment plan.  Ayele did not opt to enter that program
and the Bankruptcy Court subsequently entered judgment declining
to discharge his student debt.  Ayele now appeals the decision of
the Bankruptcy Court.

III. **Analysis**

    A.   **Motions to Strike**

Appellee has filed two motions to strike (Docket Nos. 5 and
10).  First, Appellee moves that the Court strike documents 16
through 29 from Appellant's designation of the record.  Because
those documents were not admitted at the time of trial in the
Bankrupty Court they are not properly before the District Court
on appeal.  As a result, those documents will be stricken.

Second, Appellee requests that the Court strike two sections
of the Appellant's brief: 1) the section entitled "Appellant's
Economic Factors to Determine Dischargeability" which relies
entirely on social security earnings statements which Appellant
designated for the record as Exhibit 19 and 2) the section of his

brief which refers to purported payments by the Appellant to his family members which Appellant designated for the record as Exhibit 23.  As discussed above, neither of those exhibits was introduced at trial.  The Court will, accordingly, strike those sections of Appellant's brief that refer to Exhibits 19 and 23.

### B.   Bankruptcy Appeal

#### 1. Standard of Review

The United States District Courts have jurisdiction to hear appeals from final orders of a bankruptcy court. See 28 U.S.C. § 158.  In reviewing an appeal from an order of a bankruptcy court, a district court reviews de novo "[c]onclusions of law and legal significance accorded to facts." In re Chestnut Hill Mortg. Corp., 158 B.R. 547, 549 (D. Mass. 1993).  The court must, however, accept the bankruptcy judge's findings of fact unless a review of the record demonstrates that they are "clearly erroneous." Id.

#### 2. Application

Student loans are presumptively non-dischargeable.  Under the Bankruptcy Code, a student loan may not be discharged

> [u]nless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8).

Although Ayele's brief is at times difficult to discern, it appears that he seeks to have this Court reverse the Bankruptcy

Court's decision on the grounds that it applied the wrong test when determining whether he would be subjected to "undue hardship" if the Court did not discharge his student loan debt. Ayele claims that the Bankruptcy Court erred when it applied the Second Circuit's "Brunner" test as set forth in <u>Brunner</u> v. <u>N.Y. State Higher Educ. Serv. Corp.</u>, 831 F.2d 395, 396 (2d Cir. 1987) rather than the "totality of the circumstances" test as adopted by the United States Bankruptcy Appellate Panel for the First Circuit in <u>Bronsdon</u> v. <u>Educ. Credit Mgmt. Corp. (In re Bronsdon)</u> 435 B.R. 791, 801 (B.A.P. 1st Cir. 2010).

The appropriate test for assessing undue hardship remains an open question in the First Circuit. <u>See</u> <u>e.g.</u> <u>In re Nash</u>, 446 F.3d 188, 190 (1st Cir. 2006). Ayele's claim that the Bankruptcy Court relied on the incorrect test is, however, belied by the fact that the Bankruptcy Court explicitly held that

> [r]egardless of whether this Court applies the Brunner test or the "totality of the circumstances test" . . . Ayele failed to satisfy his burden of establishing undue hardship as of the time of trial.

This Court agrees that Ayele has failed to meet his burden under either test.

### a. Totality of the Circumstances

Under the "totality of the circumstances" test the debtor must show by a preponderance of evidence that

> his past, present, and reasonably reliable future financial resources; (2) his and his dependents' reasonably necessary living expenses; and (3) other

> relevant facts or circumstances unique to the case,
> prevent him from paying the student loans in question
> while still maintaining a minimal standard of living,
> even when aided by a discharge of other prepetition
> debts.

In re Lorenz, 337 B.R. 423, 430 (B.A.P. 1st Cir. 2006).

The Bankruptcy Court appropriately determined that Ayele had presented evidence to support a finding of "hardship" but that the evidence was insufficient to prove "undue hardship".  That finding was based on Ayele's past and current income and expenses as well as his "prospects for increasing h[is] income in the future."  In re Smith, 328 B.R. 605, 611 (B.A.P. 1st Cir. 2005). The Bankruptcy Court found that despite his unemployment at the time of trial and his refusal to return to his previous line of work, Ayele was likely "eventually [to] obtain employment", at least at the level he had previously been employed.  Although the Court also acknowledged that Ayele had health issues which "pose some challenges", it specifically noted that his health concerns were not so serious that he was disabled or unable to obtain employment.

In Brondson the Bankruptcy Appellate Panel determined that the availability of the Ford Program was a factor for the court to consider under the third prong of the "totality of the circumstances" test.  Under the Ford Program, a debtor may consolidate his student loans and then make payments on the

consolidated loan based on a formula that takes into account poverty guidelines and the debtor's adjusted gross income.

In this case, the Bankruptcy Court took judicial notice of the fact that under the Ford Program Ayele would qualify for either an Income Repayment plan ("ICR") or the Income-Based Repayment program ("IBR").  As a result, if he were to participate in the Ford Program, Ayele would "not be obligated to repay his student loan debt unless his prospects improved dramatically."  At trial Ayele indicated that he understood that if he participated in the program he would not be required to make payments, but was unwilling to participate because the knowledge of his continuing liability would deprive him of his "peace of mind."

The Bankruptcy Court also took into account the prospect noted in some case law that, under the Ford repayment programs, a debtor whose circumstances significantly improve may later be subject to tax liability based on the loans that were forgiven. In response, and based on a finding that Ayele's case "cries for a form of equitable relief", the Bankruptcy Court appropriately offered Ayele the opportunity not only to participate in the Ford Program but also to have discharged any of his student loan debt remaining at the expiration of the plan period so as to avoid any negative tax consequences.  It is self-evident to this Court that providing Ayele with an option to reduce his payments to zero and

avoid tax consequences does not amount to the imposition of an "undue burden." Consequently the Bankruptcy Court did not err in finding that Ayele had failed to satisfy his burden under the "totality of the circumstances" test.

### b. **Brunner** Test

The more stringent Brunner test requires the debtor to prove:

1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

3) that the debtor has made good faith efforts to repay the loans.

Brunner, 831 F.2d 395. In essence, the only difference between the totality of the circumstances and Brunner tests is the addition of the good faith requirement. Id. at 796 n. 12. As discussed above, Ayele was not able to prove undue burden under the first two prongs. Furthermore, Ayele did not submit to the Bankruptcy Court any evidence of his good faith efforts to repay his loans. In fact, as the Bankruptcy Court noted, Ayele previously filed a petition for Bankruptcy in the 1990s with the specific intent of discharging his student loans so as not to have to repay them. Furthermore, he indicated at trial he was unwilling to return to employment as a security guard or parking lot attendant in order to repay his loans. As a result, the

Bankruptcy Court correctly held that Ayele failed to satisfy the third prong of the Brunner test.

The Court finds, therefore, that under neither the totality of circumstances test nor the Brunner test has Ayele met his burden to show undue hardship.  As a result, the judgment of the Bankruptcy Court will be affirmed.


**ORDER**

In accordance with the foregoing,

1) Appellee's motion to strike certain documents designated by the appellant for the record on appeal (Docket No. 5) is **ALLOWED,**

2) Appellee's motion to strike certain sections of the Appellant brief (Docket No. 10) is **ALLOWED,** and

3) the judgment of the Bankruptcy Court is **AFFIRMED** and the appeal (Docket No. 1) is **DISMISSED.**

**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge
Dated March 8, 2013